This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellants, David L. ("David L.") Wheeler and David A. Wheeler ("David A."), appeal from the decision of the Wayne County Court of Common Pleas, which granted summary judgment in favor of Appellee, Lightning Rod Mutual Casualty Co. We affirm.
 I.
{¶ 2} On March 2, 1997, David L. was involved in an accident in Florida, when the motorcycle he was operating was struck by a car negligently operated by Allen Henning. On August 7, 1998, Geico Insurance Co. paid David L. $100,000, the amount of Henning's policy limits, in full settlement of the claims.
{¶ 3} David L. had been an employee of Worner Roofing, although it is disputed whether he was an employee at the time of the accident. On June 25, 2001, David L. and David A. filed a complaint in the Wayne County Court of Common Pleas against Western Reserve Mutual Casualty Co., seeking underinsured motorists ("UIM") coverage pursuant to insurance policies Western Reserve had issued to Worner Roofing Co., upon the authority of Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999),85 Ohio St.3d 660 and Ezawa v. Yasuda Fire Marine Ins. Co. of Am.
(1999), 86 Ohio St.3d 557. Worner Roofing was insured by both a business automobile policy and a commercial general liability ("CGL") policy.
{¶ 4} David L. sought damages for his own injuries, whereas David A., the minor son of David L., sought damages for the loss of his father's care, comfort, services, and consortium. When it was determined that Worner Roofing had been insured by Lightning Rod Mutual Casualty Co. ("Lightning Rod") and not Western Reserve, Appellants filed an amended complaint against Lightning Rod.
{¶ 5} On December 14, 2001, Appellants moved for summary judgment, and on May 22, 2002, Lightning Rod filed a cross-motion for summary judgment. In its motion for summary judgment, Lightning Rod argued that (1) David L. was not an employee of Worner Roofing at the time of his accident, and therefore is not an insured and was not covered under either insurance policy; (2) even if he was an employee, he is not entitled to UIM coverage because he violated the notice provisions of the business automobile policy and destroyed Lightning Rod's subrogation rights; and (3) the commercial general liability does not qualify as an automobile liability policy of insurance subject to R.C. 3937.18, and therefore, UIM coverage does not arise by operation of law.
{¶ 6} The trial court denied Appellants' motion for summary judgment and granted summary judgment to Lightning Rod. The trial court found that a genuine issue of material fact remained as to whether David L. was an employee of Worner Roofing at the time of his accident. However, the court determined that assuming he was an employee, Lightning Rod was entitled to judgment as a matter of law because David L. had violated the notice and subrogation conditions of the business automobile policy. The court further found that the CGL policy was not an automobile policy and therefore was not subject to the requirements of R.C. 3937.18. This appeal followed.
 II. First Assignment of Error "THE WAYNE COUNTY COURT OF COMMON PLEAS INCORRECTLY HELD THAT UNINSURED/UNDERINSURED MOTORIST (UM/UIM) COVERAGE IS PRECLUDED BY THE PLAINTIFF-APPELLANT'S INABILITY TO COMPLY WITH THE NOTICE AND SUBROGATION CONDITIONS OF DEFENDANT-APPELLEE'S POLICY."
{¶ 7} In their first assignment of error, Appellants challenge the grant of summary judgment to Lightning Rod. Appellants assert that the trial court erred when it determined that UM/UIM coverage was precluded by Appellants' failure to comply with the notice and subrogation conditions of the policy. We find Appellants' argument to be without merit.
{¶ 8} We begin by noting the appropriate standard of review. An appellate court reviews an award of summary judgment de novo. Grafton v.Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. We apply the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12.
{¶ 9} Pursuant to Civil Rule 56(C), summary judgment is proper if:
 "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc.
(1977), 50 Ohio St.2d 317, 327.
{¶ 10} To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The non-moving party must then present evidence that some issue of material fact remains for the trial court to resolve. Id.
{¶ 11} Civ.R. 56(C) provides an exclusive list of materials which the trial court may consider on a motion for summary judgment. Spier v.American Univ. of the Carribean (1981), 3 Ohio App.3d 28, 29. Specifically, the materials include: affidavits, depositions, transcripts of hearings in the proceedings, written admissions, written stipulations, and the pleadings. Civ.R. 56(C). If a document does not fall within one of these categories, it can only be introduced as evidentiary material through incorporation by reference in an affidavit.Martin v. Central Ohio Transit Auth. (1990), 70 Ohio App.3d 83, 89. Furthermore, "[d]ocuments which are not sworn, certified, or authenticated by way of affidavit have no evidentiary value and shall not be considered by the trial court." Mitchell v. Ross (1984),14 Ohio App.3d 75, 75. "However, if the opposing party fails to object to improperly introduced evidentiary materials, the trial court may, in its sound discretion, consider those materials in ruling on the summary judgment motion." Christe v. G.M.S. Mgt. Co., Inc. (1997),124 Ohio App.3d 84, 90, reversed on other grounds (2000),88 Ohio St.3d 376.
{¶ 12} In support of its arguments, Lightning Rod relied upon copies of the two insurance policies that had been submitted with Appellants' motion for summary judgment. Although neither policy had been incorporated through the use of an affidavit and were therefore not proper Civ.R. 56(C) evidence, both parties relied upon the policies for support of their respective arguments and neither party objected to the policies as being improper Civ.R. 56(C) evidence.
{¶ 13} We note that this case involves alleged breaches of two distinct types of policy provisions. One type is a prompt-notice condition; the other is a consent-to-settle or other related subrogation condition. While the two types may be interrelated, each requires a separate analysis. During the pendency of this appeal, the Ohio Supreme Court addressed the different analyses involved in these types of conditions. See Ferrando v. Auto-Owners Mut. Ins. Co., 98 Ohio St.3d 181,2002-Ohio-7217. The Court explained under what circumstances an insurer is relieved of its obligation to provide UIM coverage when an insured breaches various policy conditions. Id. We first address the prompt-notice provision.
{¶ 14} If an insurance contract is clear and unambiguous, its interpretation is a question of law. Red Head Brass, Inc. v. BuckeyeUnion Ins. Co. (1999), 135 Ohio App.3d 616, 627; Beaver Excavating Co.v. United States Fid. Guar. Co. (1998), 126 Ohio App.3d 9, 14. In interpreting insurance policies, as with other written contracts, the court looks to the terms of the policy to determine the intention of the parties concerning coverage. Minor v. Allstate Ins. Co., Inc. (1996),111 Ohio App.3d 16, 20. The court must give the words and phrases in the policy their plain and ordinary meaning. Id., citing State Farm Auto Ins.Co. v. Rose (1991), 61 Ohio St.3d 528, overruled on other grounds, Savoiev. Grange Mut. Ins. Co. (1993), 67 Ohio St.3d 500, paragraph one of the syllabus.
{¶ 15} The business auto policy contains the following provisions regarding notice:
"A. LOSS CONDITIONS
"***
"2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS
 "a. In the event of `accident', claim, `suit' or `loss', you must give us or our authorized representative prompt notice of the `accident' or `loss'. Include:
"1) How, when and where the `accident' or `loss' occurred;
"2) The `insured's' name and address; and
 "3) To the extent possible, the names and addresses of any injured persons and witnesses.
"***
"3. LEGAL ACTION AGAINST US
 "No one may bring a legal action against us under this Coverage Form until:
 "a. There has been full compliance with all the terms of this Coverage Form***."
{¶ 16} The policy also contains an Ohio UM Coverage endorsement that changes the policy. The endorsement contains the following provision:
"E. CHANGES IN CONDITIONS
 "The CONDITIONS of the policy for OHIO UNINSURED MOTORISTS {¶ } INSURANCE are changed as follows:
"***
 "2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS is changed by adding the following:
 "a. Promptly notify the police if a hit-and-run driver is involved, and
 "b. Promptly send us copies of the legal papers if a `suit' is brought.
 "c. A person seeking Uninsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the `insured' and the insurer of the vehicle described in paragraph F.3.b. of the definition of `uninsured motor vehicle' and allow us 30 days to advance payment to that insured in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle described in paragraph F.3.b. of the definition of `uninsured motor vehicle.'"
{¶ 17} In Ferrando, the Ohio Supreme Court held that "[w]hen an insurer's denial of underinsured motorist coverage is premised on the insured's breach of a prompt-notice provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the insured's unreasonable delay in giving notice."Ferrando, 98 Ohio St.3d 181, 2002-Ohio-7217, paragraph one of the syllabus. "An insured's unreasonable delay in giving notice is presumed prejudicial to the insurer absent evidence to the contrary." Id.
{¶ 18} The Court noted that this approach was consistent with prior precedent in Ohio, which required courts to inquire into an insurer's prejudice when a breach of a prompt-notice provision was involved. Id. at ¶ 69, citing Ruby v. Midwestern Indemn. Co.
(1988), 40 Ohio St.3d 159. Consequently, the determination as to whether breach of such a condition relieves the insurer of its obligation to provide UM/UIM coverage involves a two-step process. Id. at ¶ 89. First, the court must determine if the insurer did not receive reasonable notice and therefore a breach occurred. Id. at ¶ 90. "A provision in an insurance policy requiring `prompt' notice to the insurer requires notice within a reasonable time in light of all the surrounding facts and circumstances." Ruby, supra, at syllabus.
{¶ 19} If the court determines that a breach of the prompt-notice provision occurred, the court must then determine if the insurer was prejudiced such that UIM coverage must be forfeited. Ferrando, at ¶ 89. In determining prejudice of the insurer, a presumption arises that the unreasonable delay was prejudicial; however, the insured may rebut the presumption with evidence to the contrary. Id. at ¶ 90; see, also, Ruby, 40 Ohio St.3d at 161 ("Unreasonable delay in the giving of notice may be presumed prejudicial to the insurer absent evidence to the contrary.").
{¶ 20} The trial court found that Appellants' notice was unreasonably delayed. Appellants assert that no notice was required because there was no legally recognized right until the Supreme Court's decision in Scott-Pontzer, and they further assert that the notice they did give to Lightning Rod was reasonable under the circumstances. It is undisputed that Appellants failed to give notice to Lightning Rod until they filed their complaint in 2001. At that time, more than four years had passed since the accident; almost three years had passed since Appellants settled with Henning, and two years had passed since the Supreme Court decided Scott-Pontzer. We cannot say that this delay is reasonable under the circumstances. Such an unreasonable delay resulted in a breach of the policy's prompt-notice provision.
{¶ 21} Because Appellants breached the prompt-notice provision, a presumption arose that Lightning Rod was prejudiced by the delay and resulting breach, absent evidence to the contrary. Appellants have not provided any evidence that the material breach of the policy's prompt-notice provision was not prejudicial. Accordingly, they have not rebutted the presumption of prejudice.
{¶ 22} Based upon the foregoing, Lightning Rod was entitled to judgment as a matter of law because Appellants breached the prompt-notice provision and failed to rebut the presumption of prejudice. Summary judgment was therefore properly granted to Lightning Rod with respect to the business automobile liability policy based upon the breach of the prompt-notice provision. Having found that summary judgment was proper on this basis, we decline to address Appellants' remaining arguments concerning the consent-to-settle and related subrogation provisions.
{¶ 23} The first assignment of error is overruled.
 Second Assignment of Error "THE WAYNE COUNTY COURT OF COMMON PLEAS INCORRECTLY HELD THAT THE APPELLEE'S COMMERCIAL GENERAL LIABILITY POLICY DID NOT PROVIDE AUTOMOBILE COVERAGE AND THEREFORE INCORRECTLY HELD THAT THE POLICY WAS NOT GOVERNED BY THE UM/UIM PROVISIONS OF R.C. 3937.18."
{¶ 24} In their second assignment of error, Appellants challenge the court's determination that the CGL policy was not an automobile policy and therefore not subject to the mandatory UM/UIM offer requirements of R.C. 3937.18.
{¶ 25} "For the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." Ross v. Farmers Ins. Groupof Cos. (1998), 82 Ohio St.3d 281, syllabus. The accident in this case occurred on March 2, 1997. Lightning Rod issued this policy on September 16, 1996, and the policy was in effect for a period of one year. Therefore, we must examine the version of R.C. 3937.18 that was in effect on September 16, 1996.
{¶ 26} R.C. 3937.18 has been amended several times over the past few years, notably on October 31, 2001, September 21, 2000, November 2, 1999, September 3, 1997, and October 20, 1994. The version, as amended by S.B. 20, effective October 20, 1994, applies to the case at bar. That version provides, in pertinent part:
 "(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless [UM/UIM coverages] are provided to persons insured under the policy for loss due to bodily injury or death suffered by such persons[.]"
{¶ 27} Pursuant to R.C. 3937.18, Lightning Rod was required to offer UM/UIM coverage only if the policy in question was an automobile or motor vehicle liability policy. If UM/UIM coverage is not offered in conjunction with an automobile or motor vehicle liability policy, it becomes part of the policy by operation of law. Abate v. Pioneer Mut.Cas. Co. (1970), 22 Ohio St.2d 161, paragraphs one and two of the syllabus.
{¶ 28} Appellants rely upon the following policy language in their argument that the CGL policy is an automobile or motor vehicle liability policy:
 "6. We do not pay for bodily injury or property damage that arises out of the ownership, operation, maintenance, use, occupancy, renting, loaning, entrusting, supervision, loading or unloading of:
"a. an aircraft;
 "b. an auto, except as provided under the Incidental Coverage — Mobile Equipment. This exclusion does not apply to the parking of an auto on premises owned by, rented to or controlled by you or on the ways immediately adjoining if the auto is not owned by or rented to or loaned to an insured ***." (Emphasis omitted.)
{¶ 29} The policy includes incidental coverage for mobile equipment. The policy provides:
 "We pay all sums for which an insured is legally liable for bodily injury or property damages resulting from mobile equipment, including attached equipment and machinery.
 "This coverage applies only to land motor vehicles that meet one or more of the following criteria:
 "1. Those which are used only on premises owned by or rented to you (premises includes adjoining ways).
"2. Those which are designed primarily for use off public roads.
"3. Those which travel on crawler treads.
 "4. Those which are self-propelled and designed or used only to afford mobility to the following types of equipment, which must be a part of or be permanently attached to such vehicle:
"a. power cranes, shovels, loader, diggers or drills;
 "b. concrete mixers (this does not include the mix-in-transit type); and
 "c. graders, scrapers, rollers and other road construction or repair equipment.
 "5. Those which are not self-propelled, but are used primarily to afford mobility to the following types of equipment permanently attached thereto:
 "a. air compressors, pumps and generators (this includes spraying, welding and building cleaning equipment);
 "b. geophysical exploration, lighting and well servicing equipment; and
 "c. cherry pickers and similar devices used to raise or lower workers." (Emphasis omitted.)
{¶ 30} Appellants rely on Selander v. Erie Ins. Group (1999),85 Ohio St.3d 541, in support of their argument that the CGL policy is an automobile liability policy and is therefore subject to R.C. 3937.18. Lightning Rod argues that Davidson v. Motorist Mut. Ins. Co. (2001),91 Ohio St.3d 262, applies instead. In Selander, the Ohio Supreme Court held that "[w]here motor vehicle liability coverage is provided, even in limited form, uninsured/underinsured coverage must be provided."Selander, 85 Ohio St.3d at 544. Selander involved a general business liability policy, which generally excluded coverage for claims arising out of the use of motor vehicles. However, the policy provided limited coverage for those claims arising out of the use of hired or non-owned automobiles used in the insured's business. The policy therefore specifically provided liability coverage for injuries arising out of the use of motor vehicles. The Supreme Court found that because the policy provided liability coverage for non-owned and hired motor vehicles, it was an automobile or motor vehicle liability policy.
{¶ 31} In Davidson, the Supreme Court distinguished Selander and stated that the Court "never intended Selander to be used to convert every homeowner's policy into a motor vehicle liability policy whenever incidental coverage is afforded for some specified type of motorized vehicle." Davidson, 91 Ohio St.3d at 268. The policy in Davidson was a homeowner's policy, which did not include general coverage for liability arising out of the use of motor vehicles. Instead, the policy provided only incidental coverage to a narrow class of motorized vehicles that were not subject to motor vehicle registration laws and were designed to be used off-road or around the property of the insured.
{¶ 32} We find that the policy terms involved in this case are most like those in Davidson. The Lightning Rod policy provides limited coverage for "mobile equipment." The definition of mobile equipment indicates that the coverage is for equipment used off-road, used solely on the insured's premises, which travels on crawler treads, or which is designed or used only to afford mobility to certain types of equipment. The plain language of the terms of the policy indicates that the policy does not provide liability coverage for motor vehicles or automobiles that are driven on public roads and are subject to vehicle registration laws. This Court has previously analyzed similar exclusions and policy provisions and has concluded that such exclusions do not transform the policy into an automobile or motor vehicle liability policy. See, e.g.,Wiley v. Grange Mut. Cas. Co., 9th Dist. No. 21145, 2003-Ohio-539;Overton v. Western Res. Group (Dec. 8, 1999), 9th Dist. No. 99CA0007, affirmed (2001), 91 Ohio St.3d 333. This Court has also previously found that a "parking exception" to a general exclusion does not transform a policy into an automobile or motor vehicle liability policy. See Wiley,
supra, at ¶ 22.
{¶ 33} Accordingly, we conclude that the CGL policy issued by Lightning Rod to Worner Roofing was not an automobile or motor vehicle liability policy and was therefore not subject to R.C. 3937.18. Underinsured motorists coverage does not apply by operation of law, and Lightning Rod was entitled to judgment as a matter of law. The trial court did not err when it granted Lightning Rod's motion for summary judgment as to the CGL policy. The second assignment of error is overruled.
 III.
{¶ 34} The assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellants.
WHITMORE, J. and BATCHELDER, J. CONCUR